## DECEMBER TERM, 1843.

### JOSIAH NEWMAN *v.* JESSE MEEK.

Where N. was indebted to M. on his own account, and also collaterally, as surety for Y., and N. makes payments to M. without specifying to which debt they were to be appropriated; *held,* that the law would apply the payments, made under such circumstances, to N.'s own debt.

Where a bill of exchange was taken by a judgment creditor from his debtor, the amount of which, if paid, was to be credited on the judgment, and the bill was not paid; *held,* on a bill filed by the judgment debtor, to enjoin so much of the judgment at law, that the judgment creditor must either credit the judgment, or deliver back the bill of exchange.

THE bill in this case was filed by Joseph Newman, and alleged, in substance, that, on the 4th May, 1838, Jesse Meek obtained a judgment in the Madison Circuit Court, against the complainant, and John Briscoe, for the sum of twelve thousand four dollars and sixty-five cents, which was the only liability on which complainant was bound by *promise,* verbal, written, or of record, to the defendant, either in his individual capacity, or as administrator of Joseph Meek, deceased. To pay this sum, the complainant and Uriah Newman drew a bill upon Mansell, White, & Co., of New Orleans, for the sum of thirty-five hundred dollars, dated May 9th, 1838, due at nine months, which was received by the defendant, and the net proceeds to be applied to the credit of complainant; also, to pay the same, Meek received one hundred and seventy bales of cotton, to be shipped, and the proceeds to be applied to the credit of complainant; the proceeds of which, were $8903. In proof that said cotton was to be applied to the discharge of the judgment, exhibit A, to the bill, is referred to, which is in these words. " Articles of agreement, made and entered into, and agreed upon this ninth day of May, A. D. 1838, between Jesse Meek and Josiah Newman, witnesseth : that for and in consideration, that the said Josiah Newman has agreed to deliver to said Jesse Meek all the cotton receipts shipped by the said Josiah Newman, to New Orleans, or other places, of all the cotton, raised, produced, and growed upon the said Newman's plantation, known as

the Agency Place, adjoining the residence of John Montgomery, and his plantation in Carrol county, which he is cultivating in connection with Uriah Newman, and in consideration whereof, aforesaid, of said delivery of cotton, the said Jesse Meek agrees to extend the time of the payment of all moneys, now due and owing to him, in his individual and representative capacity of administrator of Joseph Meek, until the first day of January, A. D. 1839, by the said Josiah Newman. The proceeds of which said cotton is to be *placed* as *credits* to the said Newman's liabilities, as aforesaid." (Signed) Josiah Newman. Jesse Meek.

Receipt on the back of the agreement, was in these words.

" The said Jesse Meek has received a draft, drawn by Josiah and Uriah Newman, for thirty-five hundred dollars, dated May 9th, 1838, due nine months after date, and drawn on Mansell, White, & Co., New Orleans, La. The net proceeds, when collected, to be applied to said Josiah Newman's credit, May 15th, 1838."

The bill further alleged, that the defendant was endeavoring to enforce collection of the judgment, without giving credit for the amount of proceeds of the cotton, and the bill; and prays that defendant be compelled to account for both, and in the interim for injunction, which was granted. The defendant answered, and denied that the cotton received, and the proceeds of the bill, were to be credited on the judgment ; admits one hundred and seventy bales were received, which brought the sum in the bill mentioned, and the bill of exchange was also received, but insists they were all to be credited on another debt, the debt of one W. M. Yates to him ; for which complainant, he averred, was responsible, having purchased a tract of land (on which there was a deed of trust, given by Yates to Meek) from Yates, in partnership with one W. C. Beck, with notice of the existence of the debt against Yates, and subject to it. That the bill of exchange on Mansell, White, & Co. had not been paid, and was in suit. That he delayed proceedings under the judgment until after the 1st January, 1839, as agreed, and afterwards tried, by executions, to make the money. Was willing to give credit for the cotton, according to agreement, on the Yates debt, which, if it was done, would

leave a balance yet due of about $1000 ; he charges that it is evident that the cotton and bill of exchange were to be credited on the Yates debt, because complainant and W. C. Beck had filed a bill to rescind a sale under the deed of trust, at which sale Meek had purchased. The gravamen of which bill was, that the defendant had agreed to give time upon getting the crops from year to year, which is the same agreement attempted to be set up in this case, and then when they were unprepared for a sale, in consequence of the agreement to delay, in violation of his agreement, and for the purpose of purchasing at a reduced price, Meek had sold under the deed of trust. He makes his answer a cross-bill ; Newman answered the cross-bill, and says, that the bill filed by him and Beck, was filed by Beck, and complainant knew nothing of its charges.

The witness, C. C. Shackleford, for complainant, proves that he drafted the written agreement referred to, and at the time it was prepared understood, from the conversation of the parties, that the cotton and bill were to be credited on the judgment. *He states that the bill had not been paid.*

The witness Thomas Shackleford states, that he heard a conversation between complainant and defendant, in which they disagreed as to what account the payments were to be credited, and he refused to decide between them. He was the attorney for Meek, in obtaining the judgment, and heard nothing said about time to be given, at the time the judgment was taken.

*C. C. Shackleford*, for complainant.

The complainant charges but one liability to defendant, Meek, and that, to liquidate that liability, he transferred 111 bales of cotton ; that Meek, by letter, obtained 59 other bales, which sold for $8903·00, which was placed to said Meek's credit, by N. & J. Dick & Co., who sold the cotton ; that complainant likewise gave a draft for $3500, which was, when paid, to be given or placed as a credit on complainant's liabilities, and that these amounts, when paid, will nearly or quite balance the amount of the judgment at law. Complainant seeks to have the credit for his cotton, as expressly stipulated by defendant, and that defendant also either re-

turn the draft or also allow a credit for it.    To substantiate all and every allegation in the bill, the exhibits filed, in opinion of complainant, are sufficient ; that his agreement was also separate and distinct, the exhibits also prove ; that Meek agreed that complainant's responsibilities alone should be credited, and not the debt of Yates, the exhibits prove ; that the defendant, Meek, knew that the complainant had an eye single to the liquidation of his own, and not the debt of Yates, his receipts to complainant prove.    In the opinion of complainant, there are but two principles of law involved in the case.

1st.  Is complainant responsible, or bound to pay the notes executed by, or the debt due by Yates, to the estate of Joseph Meek ?

The rule of law applicable to this proposition is too well established, and must be too well known to this honorable Court to require a reference to authorities to settle the point, that, to make one liable for the debt of another, the promise must be in writing, and not upon such testimony as the *belief* of the respondent.

2d.  Will the Court receive the answer of the defendant, Meek, that the understanding of the parties was different, and that his, Meek's, understanding was, that the cotton and bill of exchange were intended to be credited on the debt of Yates, and not on the liability of the complainant, when his own signature to his receipts, and the words of the receipt, contradict what he states *now*, to be his understanding *then* ?

It is also an established principle, that a party will not be permitted in equity to deny or controvert an instrument in writing, made and signed by himself, by parol, without other proof than his own statement.

If this principle be true, then the answer of Meek amounts to nothing ; he does not deny his receiving the $8903, nor the bill of exchange for $3500 ; neither does he deny that the judgment of $12,004, is the only claim he has against complainant.    Then on the bill and answer the injunction should be clearly sustained, until a decree can be had for the proceeds of the cotton, and the bill returned, or a decree for that also rendered.

The only question for decision is, does complainant owe any other debt but the judgment debt of $12,004·00 ?

The answer does not show that he does.

Were the proceeds of the bill and the cotton to be placed to complainant's credit, or the debt of Yates ? The contracts show it was to be credited on complainant's liability.

*Robert Hughes,* for defendant, Meek.

1. The bill ought to be dismissed. Because the complainant, by his own admission, in the bill filed by him and Beck, insists, as a ground of rescission, that the agreement was made which is insisted upon in this case, and that it applied to that case. The answer which complainant gives to the cross-bill wont do, because he is yet prosecuting that bill on this ground, and for that reason attempting to enforce a rescission of the sale under the deed of trust.

2d. But, there are other reasons upon the face of the agreement itself ; it was not confined to the judgment, and the agreement is to deliver the cotton on Newman's plantation, known as the Agency Place, or the Yates place, in which Beck was interested ; and Mr. Beck, in the bill for himself and complainant, had good reason to insist, that the agreement applied to the Yates debt ; otherwise the delivery of his cotton, in payment of Newman's debt, would have been a fraud. The bill seems to be filed on the ground, that the cotton and bill were to be credited on the judgment, because Newman had made no promise to pay the Yates debt. The agreement does not speak of any debt in which Newman was bound by promise, but merely his liabilities to Meek, either individually or in his representative capacity. It will not do to say that this was not a debt of Newman because Beck was bound with him ; if so, the same would apply to the judgment, because the judgment was against Newman and Briscoe.

The debt against Yates was one of Newman's liabilities, because property held and claimed by him was subject to it, and by his answer he admits he took it *cum onere ;* and as long as he held the property and claimed it, it was his debt, his property being bound for it.

3d. The amount of the bill, at any rate, if we are wrong about the cotton, which we do not admit, should not be charged to Meek, because it is alleged in the answer, in reply to a charge in the bill,

that the bill has not been collected, and is in suit. The proceeds of the bill were to be credited ; until received there will be no proceeds, and cannot be credited. Charles C. Shackleford proves that the bill has not been paid.

*W. Yerger,* for complainant.

C. C. Shackleford (who drew up the agreement) understood from the parties at the time, that the " liabilities" referred to in it, were, the judgment in Madison county, enjoined in this case, and the one in the Federal Court, which has been paid. He heard nothing which would induce him to suppose that Newman intended to pay off any part of Yates's liability.

Thomas C. Shackleford was Meek's attorney — obtained the judgment enjoined : he never heard of any agreement for an extension of time, as a condition of permitting the judgment to be taken : never heard Newman admit his liability on account of Yates, but heard him state that the cotton shipped was to pay the judgment.

These are all the facts.

No question of law is raised by the record : it is all a question of fact, depending upon the meaning of the term " liabilities" used in the agreement. Upon this point the proof is clear : the answer of Newman to the cross-bill states, explicitly, that it referred to the judgment in Madison county. The agreement bears date on the 9th day of May, 1838 ; the judgment was rendered on the 5th ; and before the rendition there was a virtual agreement, as C. C. Shackleford proves, that an extension of time would be given on it, if Newman would make no defence. The agreement refers to Newman's own liabilities, not those of Newman & Beck, which would be the nature of any that might have been assumed on Yates's account ; and aside from Newman's answer, and the internal evidence of the contract, C. C. Shackleford, who drew up the agreement, states, that he understood the term " liabilities " to allude to the judgment in Madison county, and that in the Federal Court ; thus explaining any latent ambiguity that may be raised.

CHANCELLOR. On the 5th of May, 1838, Jesse Meek recovered a judgment at law against Josiah Newman for $12,004·65,

which this bill seeks to enjoin, upon the ground that since the rendition of the judgment he has made payments thereon to the amount of $8903, by means of the shipment of cotton to the order of Meek, and of $3500 by means of a draft on Mansell, White, & Co., which, it is alleged, were by agreement to be credited on the judgment. The only question presented by the case is as to the application of these payments. The complainant insists that they should be applied to the judgment here enjoined, while the defendant insists they were rightly applied to the payment of a debt due him from W. M. Yates, which he insists Newman had become bound to pay. There is no testimony to show any such agreement or liability, except so far as it appears that Newman had purchased from Yates some property which stood bound to Meek for a debt due from Yates. He was, at most, only collaterally bound for Yates's debt, and the law would apply any payment made under such circumstances to his own debt, where he was directly bound, even if there had been no agreement to that effect. On the other hand, the written agreement between the parties on the subject of the payments, is proved by the draftsman thereof to have been intended to apply to the judgment against the complainant. The bill of exchange was only to be credited if it was collected. The testimony is, that it has not been collected. Upon this view of the case, I shall direct a decree perpetually enjoining $8903 of the judgment, that being the proceeds of the cotton receipts ; and as to the remainder of the judgment, the injunction will be dissolved, unless the defendant elects to retain the bill of exchange ; in that event, the injunction must extend so as to include the amount of the bill. If the defendant does not so elect to take the bill, he must be decreed to deliver it up to the complainant. Let a decree be prepared accordingly.